## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| LaVELLE, ROBERT, and ) | Case No. 04-01479-TLM |
| LaVELLE, MARY BETH, ) | |
| ) | **MEMORANDUM OF** |
| Debtors. ) | **DECISION** |
| ) | |
| _____ ) | |

### INTRODUCTION

This matter comes before the Court on a motion for abandonment advanced by the chapter 7 debtors. Their trustee opposes that motion. At a preliminary hearing, the Court ordered the issues separated for purposes of hearing and disposition, electing to hear and consider first certain questions concerning the assertion of a homestead exemption and then, later, other evidence related to valuation and abandonment.

The first hearing was held on December 14, 2005, and the matter was taken under advisement upon the conclusion of evidence and argument. This decision constitutes the Court's findings of fact and conclusions of law on the matter presented thus far. Fed. R. Bankr. P. 7052, 9014.

### FACTS

Robert LaVelle and his wife Mary Beth LaVelle ("Debtors") filed a joint

MEMORANDUM OF DECISION - 1

petition for chapter 7 relief on April 26, 2004. Doc. No. 1. Richard E. Crawforth ("Trustee") was appointed as the trustee of this chapter 7 estate.

In schedule A (which according to its terms requires[1] a listing of "all real property in which the debtor has any legal, equitable or future interest"), Debtors listed a house and 10 acres on Blackcat Road in Kuna, Idaho, and also a "manufactured home on 60 acres w[ith] faux 'old-west town'" located on South Eagle Road in Meridian, Idaho (the "Eagle Road Property"). *See* Ex. M (copy of Doc. No. 1). Testimony established that Debtors operate an outfitting and recreational business through their closely held corporation, Bogus Creek Outfitters, Inc. ("BCO"), and the "old west town" is used in that enterprise.

Schedule A also requires a disclosure of the "nature of debtor's interest" in the real property listed. Here, in regard to both parcels, Debtors indicated their interest as "FS" which, their lawyer advised at hearing, was meant to indicate "fee simple." *See* Ex. M.[2] Schedule A further states "If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." Here, Debtors

---

[1] The format of the schedules is mandatory. *See* Official Form 6.

[2] The term fee simple has been defined as "[a]n interest in land that, being the broadest property interest allowed by law, endures until the current holder dies without heirs." Black's Law Dictionary 648 (8th ed. 2004). *See also* Ballantine's Law Dictionary 463 (3d ed. 1969) (defining fee simple as "[t]he largest estate in land known to the law and implying absolute dominion over the land"). In Idaho, a "fee simple title" is presumed to pass by a grant of real property unless it appears from the grant that a lesser estate was intended. Idaho Code § 55-604.

MEMORANDUM OF DECISION - 2

placed "C" in the column for both parcels of real property. *Id.*

Debtors' exemption schedule, Schedule C, claimed a homestead exemption in the Eagle Road Property citing Idaho Code § 55-1003. *Id.*[3] Debtors asserted that this exemption had a value of $48,959.00, consistent with the asserted value of the entirety of that real property on that schedule and on Schedule A ($500,000.00) less a real property mortgage ($448,401.00) and a mechanic's or materialman's lien ($2,640.00). *Id.*

It was only after the § 341(a) meeting and examination of Debtors that the Trustee inquired as to the nature of the mortgage against the Eagle Road Property, held by a party named Knox. He indicated that it was then that he became aware of issues concerning just how and by whom the Eagle Road Property was held. However, the Trustee never filed an objection to the asserted exemption.

On October 26, 2005, Debtors filed a "Motion to Compel Abandonment of Homestead Real Property." *See* Doc. No. 42 ("Motion"). It appears clear from the Motion's title and text that Debtors wish to have the 60 acres and improvements comprising the Eagle Road Property abandoned, contending that

---

[3] Idaho Code § 55-1003 provides "A homestead may consist *of lands, as described in section 55-1001*, Idaho Code" and then establishes a monetary cap on the amount of the exemption. Idaho Code § 55-1001(2) defines homestead as "*the dwelling house or the mobile home in which the owner resides or intends to reside, with appurtenant buildings, and the land on which the same are situated . . . .*" Under Idaho Code § 55-1001(4), the "owner" includes, but is not limited to, "a purchaser under a deed of trust, mortgage, or contract, or a person who takes the subject property under a life estate." Each of these several provisions of the statute have particular meaning and import in the context of the claim asserted in the instant case.

MEMORANDUM OF DECISION - 3

given its reasonable value, the Knox mortgage debt, and the homestead exemption, there is no value for the bankruptcy estate and the "burdensome or inconsequential value" tests of § 554(b) are met. *Id.*

Several material and important documents were introduced at the December 14 hearing, impacting the question of ownership of, and Debtors' interest in, the Eagle Road Property. They, and the witnesses' testimony, establish the following.

Debtors, together with Howard and Ronna Sevy as trustees of the Howard & Ronna Sevy Trust ("Sevys"), formed an Idaho limited liability company, South Eagle Properties, LLC ("SEP") on March 6, 2001. Ex. A. Debtors each obtained and held 3,500 units of ownership in SEP, or 7,000 units together, and the Sevys held 1,500 units each, or 3,000 units together. Ex. B at 27; Ex. C at 2. This 70%-30% ownership remains constant to this day, and there were and are no other owners of SEP.[4]

In March, 2001, SEP purchased the Eagle Road Property from Jeffrey and Cathy Knox. *See* Ex. J (promissory note of SEP to Knox, dated March 13, 2001); Ex. K (mortgage of SEP to the benefit of Knox, dated and recorded March 16, 2001); Ex. H (warranty deed from Knox to SEP, recorded March 16, 2001). There was no proof of any deed of record from SEP after March 16, 2001, transferring

---

[4] It appears that Debtors' initial capital contributions for their interests were valued at $25,000.00 and Sevys at $150,000.00. *See* Ex. B at 26.

MEMORANDUM OF DECISION - 4

any of its ownership interest in the Eagle Road Property.

In 1992, well prior to the creation of SEP, Debtors formed BCO. *See* Ex. D (articles of incorporation for Bogus Creek Outfitters, Inc., an Idaho corporation, filed March 18, 1992). Originally, BCO was owned by Debtor Robert LaVelle and an individual, Kent Freitag. *Id.* Testimony indicates that Freitag later left BCO in the latter 1990's and BCO was thereafter owned solely by Debtor Robert LaVelle, with an evident community interest of his wife.[5]

BCO minutes of a "special corp[orate] meeting" in February, 2001 indicate a desire to acquire ground in the Treasure Valley to further the BCO business but that "[r]ather than BCO purchasing [this property], [a] separate corp. was formed[,] SEP" and that "BCO agrees to [a] long term lease." *See* Ex. F. An additional note on this handwritten minute states "We as owners/officers of BCO don't really want to take partners into the corporation again" thus evidently explaining the decision why SEP was separately formed to acquire the real property and why BCO remained closely held only by Debtor Robert LaVelle and his wife. *Id.*

In furtherance of these decisions, a lease was entered into on April 16,

---

[5] Robert LaVelle's wife, Pam, passed away in 1996. Her name appears on several of the BCO corporate minutes. *See* Ex. F. His current wife, Mary Beth LaVelle, shares ownership of BCO according to Debtors' Schedule B, and she signed several of the later corporate documents. *See*, *e.g.*, Exs. F, S. The Form 1120S corporate tax returns for BCO in 2001 and 2002, Ex. P, show her as a 50% owner of BCO.

MEMORANDUM OF DECISION - 5

2001, by SEP as "the owner of" the Eagle Road Property and the lessor, and BCO as the lessee. *See* Ex. G. Under this lease, BCO is obligated to pay SEP $3,300.00 per month in rent, and also pay utilities, taxes and insurance. *Id.*

There was no evidence whatsoever of any conveyance by SEP of any interest in the Eagle Road Property other than the right to possession under this April 2001 lease to BCO.

Debtors testified that BCO "orally" leased (or, perhaps, subleased) the Eagle Road Property to Debtors. In any event, Debtors commenced residing there starting in December, 2003. Debtor Mary Beth LaVelle testified that there was no written lease or sublease between BCO and Debtors, and that Debtors were "tenants at will."

Debtors' petition and schedules indicated their address as 7325 S. Eagle Road. Though all the legal descriptions of the Eagle Road Property in the above documents are by metes and bounds rather than by street address, that Debtors reside on the Eagle Road Property is not in dispute.[6]

Debtors disclosed their ownership of SEP and BCO on Schedule B,

---

[6] The statement of financial affairs indicates that the address of BCO is 7355 S. Eagle Road, and the address of SEP is 7325 S. Eagle Road, the same address as used by Debtors. *See* Ex. M. It appears that Debtors reside in the "manufactured home" on the Eagle Road Property. No direct evidence was proffered regarding the ownership of this manufactured home. However, there is no disclosure on Debtors' schedule B that they own the manufactured home personally, and they provided no proof that they purchased or own this asset. The listing of Knox's debt would indicate that the manufactured home was part of the property and conveyance in March, 2001, between Knox and SEP, and thus owned by SEP. *See* Ex. M at schedule D.

MEMORANDUM OF DECISION - 6

claiming that their interest in each entity was worth exactly $1.00. *See* Ex. M. Debtors' statement of financial affairs also disclosed their ownership interests in the two entities. *Id.*

**DISCUSSION AND DISPOSITION**

Only certain issues are presented for decision at this time. They involve the propriety and validity of Debtors' assertion of a homestead exemption in the Eagle Road Property under Idaho Code § 55-1001, *et seq.* The parties sought, and the Court agreed to provide, a ruling on this matter, because the existence and value of an exemption was believed to potentially be material to the determination of whether an abandonment should be ordered.

    **A.**    **Debtors' interests in the Eagle Road Property**

All interests of a debtor in property as of the date of the filing of a bankruptcy petition become property of the estate. *See* § 541(a)(1); *In re Bauer*, 05.3 I.B.C.R. 60, 61 (Bankr. D. Idaho 2005). However, the nature and extent of a debtor's interest in property is determined by applicable state law. *Bauer*, 05.3 I.B.C.R. at 61; *In re Jay*, 03.1 I.B.C.R. 28, 29 (Bankr. D. Idaho 2003). Although all of a debtor's rights become property of the estate, the mere filing of a bankruptcy petition does not increase or enhance those rights or the interests the debtor holds beyond what existed under nonbankruptcy law. *Jay*, 03.1 I.B.C.R. at 29; *see also California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.)*,

MEMORANDUM OF DECISION - 7

792 F.2d 1400, 1402 (9th Cir. 1986) (holding § 541(a) "merely defines what interests of the debtor are transferred to the estate. It does not address the threshold question of the existence and scope of the debtor's interest in a given asset. . . . [W]e resolve these questions by reference to nonbankruptcy law.").

When Debtors filed this case, contrary to what they asserted in their schedules, they did not hold a "fee simple" interest in the Eagle Road Property. The fee simple owner of the property was SEP. *See* Ex. H; Idaho Code § 55-604. BCO was a tenant of that property under a written lease. Ex. G. The sole arguable interest of Debtors *in the real property* was that of subtenant of the manufactured home they used as a residence under an oral lease from BCO.[7]

Debtors' counsel attempted to re-style or expand upon Debtors' rights to or interests in this real property. He argued at hearing, at various points, that Debtors "functionally" or "operationally" owned the real property, or that they held a "fee simple determinable" interest. In Debtors' brief, Doc. No. 63, he argued that Debtors "shared ownership through [SEP]" (*id.* at 2); that "Debtors' ownership interest is held vicariously by and through their sole ownership of [BCO] as well as by and through their majority ownership of [SEP]" (*id.* at 3); that Debtors "[t]hrough this surrogate relationship" shared ownership with the Sevys (*id.*);

---

[7] BCO already had possessory interests to the whole of the 60 acres, including the manufactured home and the faux old-west town, under the April, 2001 lease. That BCO subleased the balance of the Eagle Road Property (*i.e.*, other than the manufactured home) to Debtors was neither proven nor important to the issues currently presented.

MEMORANDUM OF DECISION - 8

and/or that Debtors' "vicarious or surrogate ownership interest" in the real property qualifies for homestead exemption protection (*id.* at 9).

All of these are strained and desperate attempts to create what does not exist – a legally cognizable ownership interest of Debtors in the real property comprising the Eagle Road Property. Debtors' attempts are not successful.[8] The real property is owned by SEP. Debtors' schedules are false and misleading; Debtors have no "fee simple" interest in this real property and, indeed, they have no interest in the real property that could properly be scheduled on schedule A.[9]

### B.    Debtors' ability to properly claim a homestead exemption

The statutory language in Idaho Code §§ 55-1001 and 55-1003 quoted earlier in this decision make clear that the homestead exemption relates to real property. The exemption protects a debtor's interest in such "lands, as described in section 55-1001" used as a residence. Under the evidence presented, Debtors are not "owners" as defined in Idaho Code § 55-1001(4) of either the real property or the improvements on that real property.

---

[8] Debtors also attempted to get to their desired goal by piercing the corporate veil of BCO and establishing that it was but their alter ego. Even assuming the attempt should be tolerated, given Debtors' assertions of separate corporate existence throughout their bankruptcy filing, something that gives rise to concerns about judicial estoppel, *see In re Pich,* 00.4 I.B.C.R. 183, 185-87 (Bankr. D. Idaho 2000), the evidence proffered by Debtors was wholly insufficient to achieve the intended result.

[9] The Court does not today explore or address any consequences of the materially inaccurate schedules that were signed by Debtors and their counsel, with the sole exception of determining whether the assertion of the exemption can stand.

MEMORANDUM OF DECISION - 9

Testimony indicated that Debtors were "tenants at will" under an oral grant of possession from BCO, itself a tenant on a lease from SEP. In fact, in an amended schedule G filed on December 7, 2005, immediately before hearing, Debtors admit that they personally held a possessory interest in the property as tenants at will of BCO. *See* Doc. No. 64 at amended schedule G.[10]

This Court has recently considered the ability of a debtor to claim a statutory Idaho homestead exemption in a leasehold. In *In re Hale*, 04.3 I.B.C.R. 128 (Bankr. D. Idaho 2004), the debtors leased and lived in a house owned by a family limited partnership in which they were general partners. *Id.* They attempted to claim a homestead exemption in both their interest in the limited partnership and in their rights under the lease of residential real property. *Id.* That lease was in writing, and ran year-to-year, but was terminable by the lessor limited partnership at any time. *Id.* The Court stated:

> Here, Debtors assert a homestead exemption not in a mobile home they own located on land leased from another, but in a house (which they do not own) occupied under a year-to-year lease that can be terminated at any time. In effect, their leasehold interest under these facts, and so, too, their exemption claim, appears limited to a right of possession. The homestead statutes, however, contemplate an ownership interest in property with a corresponding monetary value that a debtor can claim as exempt. Debtors' mere right of possession under the lease, with no corresponding "ownership" interest, has no cognizable

---

[10] In this filing, Debtors continue to list the Eagle Road Property on their real property schedule, though they now characterize their interest as "fee simple determinable subject to the Sevy's interest." *Id.* at amended schedule A. For a number of reasons, some stated earlier, this assertion is not supported by the evidence.

MEMORANDUM OF DECISION - 10

>  monetary value that they can claim as exempt. Thus, Debtors can not claim a homestead exemption when their only interest in the Property is a right to possession under a lease terminable at any time.

04.3 I.B.C.R. at 130-31 (footnotes omitted).[11]

Similarly, there is no ability of Debtors in the present case to properly claim an Idaho homestead exemption in the Eagle Road Property or in their oral, "at will" leasehold thereof.

### C. Failure of the Trustee to object to the exemption claimed

Trustee did not object to the homestead exemption claimed by Debtors within 30 days after the conclusion of the § 341(a) meeting in this case, as is required under Fed. R. Bankr. P. 4003(b). Debtors rely on *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), in which the Supreme Court established that the deadlines in Rule 4003(b) have meaning, and that a party's failure to object bars that party from contesting the exemption later "whether or not [debtor] had a colorable statutory basis for claiming it." 503 U.S. at 643-44. The Trustee, however, credibly distinguishes the instant case from *Taylor*.

The Trustee admits that, if Debtors actually had an interest in the Eagle Road Property, his failure to object would bar him from disputing the exemption as claimed on schedule C no matter how flawed its assertion might be. In *Taylor*,

---

[11] *Hale* distinguishes *In re Tiffany*, 106 B.R. 213, 89 I.B.C.R. 221 (Bankr. D. Idaho 1989), which addressed homestead claims by a debtor who leased real estate but owned the mobile home located on that real estate.

MEMORANDUM OF DECISION - 11

for example, the debtor had an interest in the proceeds of an employment discrimination lawsuit. She claimed the full amount exempt on her schedule C rather than the small portion properly exemptible under state or federal law. 503 U.S. at 642. Her trustee's failure to object within the time set by Fed. R. Bankr. P. 4003(b) was a conclusive bar.

But, as the Trustee notes, Debtors must still prove that they have interests in the property they attempt to exempt. Unless there is an interest in property that becomes property of the estate under § 541(a), there is nothing for a debtor to exempt under § 522(b), which states "Notwithstanding section 541 of this title, an individual debtor may exempt *from property of the estate* . . . ." § 522(b) (emphasis added).

Debtors clearly attempt to assert an exemption in the Eagle Road Property. *See* Ex. M at schedules A, C. Unlike the situation in *Taylor*, where the debtor had an interest in the property of the estate subject to the claimed exemption, Debtors have no interest in the real property. Neither § 541(a)(1) nor the assertion of an uncontested exemption claim can create something for Debtors they do not already have. Under the evidence, the Eagle Road Property is not property of the estate.

### D.     Debtors' interests in SEP

Debtors do own a 70% interest in SEP, and that interest is property of the estate. *See* § 541(a)(1); *accord Hale*, 04.3 I.B.C.R. at 129 ("[I]t is a debtor's

MEMORANDUM OF DECISION - 12

partnership interest, not the assets of the partnership, that becomes property of the bankruptcy estate when an individual partner files for bankruptcy."). Debtors scheduled their ownership of this equity position in the limited liability company on their personal property schedule B and disclosed it in response to question 18 on the statement of financial affairs. Ex. M.[12]

There is, though, no credible issue presented regarding any exemption of this personal property. Debtors' asserted exemption in schedule C was on the real property described as "manufactured home on 60 acres" and was not in their personal property interest in SEP. *See* Ex. M. If Debtors were to argue that they were claiming the homestead exemption in their 70% interest in SEP, they would be unsuccessful. *Hale* establishes that a homestead exemption cannot be properly asserted against an interest in a legal entity. 04.3 I.B.C.R. at 129-30 ("Debtors' partnership interest . . . is an intangible personal property right that does not give them an interest in either the house they live in or the land upon which it sits. Their partnership interest is therefore excluded from the scope of Idaho's homestead exemption.").

## CONCLUSION

On the evidence presented, Debtors lack any interest in the real property

---

[12] Their assertion that the value of their interest in SEP is $1.00 is not supported by any competent evidence as yet, and appears belied by some of the evidence that has been submitted. The value of their ownership in this entity must be addressed later in this case, as discussed below.

MEMORANDUM OF DECISION - 13

they attempt to exempt. This is inescapably true notwithstanding the failure of the Trustee to object to their claim of exemption.

Given the fact that the Eagle Road Property is not property of this estate and Debtors hold no interest in which they can exempt, the Court must necessarily, and will, deny Debtors' Motion for abandonment, Doc. No. 42. That ruling will be without prejudice to Debtors bringing a separate motion seeking abandonment of their 70% interest in SEP should they wish to do so and believe they can meet the standards of § 554 in relation to that property of the estate. The Trustee may, similarly, proceed with his attempts to administer that asset, and may notice for hearing his "Petition to Employ Professional Marketing Agent," Doc. No. 54.[13]

The Court will enter a separate order.

DATED: December 19, 2005

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[13] Debtors' 100% interest in BCO is also property of the estate. The Trustee is entitled to evaluate the value of that interest and to administer, or abandon, it.

MEMORANDUM OF DECISION - 14